**IN THE COURT OF APPEALS OF IOWA**

No. 14-0103
Filed September 17, 2014

**WADE STONER,**
        Plaintiff-Appellee,

**vs.**

**HEATHER LARSON n/k/a HEATHER MILLER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clay County, Don E. Courtney,

Judge.


        Heather Larson (n/k/a Heather Miller) appeals a district court ruling

denying her petition to modify the physical care provision of a custody decree.

**AFFIRMED.**


        John M. Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellant.

        M.W. Miller Jr. of Miller, Miller, Miller, P.C., Cherokee, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**VAITHESWARAN, P.J.**

Heather Larson (n/k/a Heather Miller) appeals a district court ruling denying her petition to modify the physical care provision of a custody decree.

## I.    Background Facts and Proceedings

Stoner and Miller lived together for several years and had a child in 1999. They separated three years after the child was born. In 2005, the district court entered a custody decree granting Stoner physical care of the child, subject to broad visitation with Miller. The court reasoned that Stoner was "considerably the more stable of the two, both financially and otherwise."

In 2012, Stoner considered accepting a promotion that would have required an out-of-state move. The possible move angered his teenage son. Stoner eventually elected not to relocate.

Meanwhile, on a cold winter night, Stoner drove his teenage son to the country to discuss his poor attitude. Stoner's language became heated and inappropriate. He eventually stopped the car and told his son to get out. The teen did. Stoner drove 400 to 500 yards before turning around to find his son. In the interim, the teen ran to a nearby farmhouse and called his mother, who picked him up. Miller filed a child abuse complaint with the Iowa Department of Human Services, which investigated the matter and issued an "unconfirmed" report.

The next day, Miller filed a petition to modify physical care. Stoner countered with an application to have Miller held in contempt for failing to return the child. A district court judge found Miller in contempt but allowed her to purge the contempt by obeying the existing custody order. A different judge held two

hearings on Miller's modification petition and ultimately denied the petition. This appeal followed.

## II. Analysis

"The legal analysis employed in resolving a question concerning the custody of a child born of [unmarried parents] is the same as that which would have been utilized if the child's parents had been married and a dissolution of their marriage had resulted." *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). To modify a custody decree, the applying party is generally required to show (1) a substantial change of circumstances not contemplated by the decree that is essentially permanent, and (2) an ability to provide superior care. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Our review is de novo. *Everist*, 418 N.W.2d at 42.

The district court determined Miller satisfied the substantial change requirement. The court relied on the car incident, a text message from the teen indicating an intent to harm himself, and the teen's expressed preference to live with his mother.

The court determined the second requirement—an ability to provide superior care—was not satisfied. The court reasoned as follows:

> No family is perfect and [Stoner] obviously misplayed the [car] incident, but this one incident does not reflect that [the child's] best interests make it expedient to make the requested change. [The child] is doing well in school and is involved in extracurricular activities. The court concurs with [the prior judge's] impression that [the child] is a good boy, sensitive to the feelings of others, and wants to please both parents. The court has considered that [the child] will be fifteen years old in March 2014 and that he is currently a freshman in high school. The court believes [the child's] strength of preference is strong because he loves his mother and is concerned for her welfare and believes his presence with her will

provide her with the security she needs. The court believes that [Miller] is encouraging [the child] to leave his father and is enticing him to live with her. The record supports that [Stoner] has encouraged the parent-child relationship between [the child] and his mother. . . . [T]he mental health therapist believes [the child] will thrive in the most stable environment. [Miller] does not have the stability in her life to minister more effectively to [the child's] long-term interest. This court believes [the child's] best interest is for him to remain with his father.

In reviewing the court's ruling, we have the benefit of transcripts, but we do not have the benefit of seeing and assessing witness demeanor. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (noting trial court "'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.'") (quoting *In re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974)). This is a significant deficit in a case such as this, where the parents expressed diametrically opposed opinions on how the child was faring. Given the district court's unique vantage point, we give weight to the court's findings. *Everist*, 418 N.W.2d at 42. We also note that Miller's burden is a heavy one; once established, custody should be changed only for the most cogent reasons. *Melchiori*, 644 N.W.2d at 368; *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

With these principles in mind, we agree with the district court's decision to deny Miller's modification application. The original decision granting Stoner physical care rested on his financial stability and the stability of his marriage. Those factors did not change in the intervening years. What did change was the child's relationship with his father and stepmother. While Stoner and his wife laid the blame for this change at Miller's doorstep, the district court accurately found that Stoner was not without fault. His response to the teen's fragile emotional

state during the car incident was harsh and insensitive and engendered deep mistrust, even if it did not result in a confirmed child abuse report.

That said, Miller had not stabilized her financial or relationship situation in the years since the custody decree was entered and was found to have incited the teen to disregard the custody provisions of the decree. Notably, she sought to enroll him in a different school district without obtaining Stoner's approval and without giving serious thought to the potential destabilizing effect on the teen.

We recognize that, for several years, the teen expressed a preference to live with his mother. However, courts give less weight to a child's preference in a modification action than in an original custody determination. *See In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa Ct. App. 1987).

The district court essentially found that the teen was caught in the middle. The record supports this finding. The child's therapist confirmed that the child was "defensive of or protective of his mom," had "an unhealthy attachment with both parents," and expressed "anger towards both" because they could not "agree on parenting decisions." While the therapist also said the teen perceived his relationship with his mother to be "better" and "more comfortable" than the relationship with his father, she agreed the anxiety and emotional stressors he was experiencing should reduce the weight to be given his preference, relative to an average fourteen-year-old.

It is fair to say that, at times, neither parent acted in the child's best interests. As the district court judge who ruled on Stoner's contempt application stated, Miller "effectively testified that she [did] not want [the child] to be with his father, and she would not assist in his return." For this reason, the court stated

Stoner was justified in insisting on compliance with the custody decree, but also stated he should "think very carefully about his lifelong relationship with [the child,] and whether insisting on the point will harm or help such a long-term relationship."

Despite the parents' sometimes inappropriate actions, it is clear they loved the child.  It is also clear that, until the child's teenage years, Stoner met the child's emotional as well as physical needs.  Although Stoner's level of emotional support declined, Miller did not establish she could completely fill the void, given the changes in her own life.  She also did not adequately explain how uprooting the teen to a new town, home, and school would afford him the stability his therapist testified he required.

Miller failed to prove she was the superior caretaker.  Accordingly, we affirm the denial of Miller's modification petition.

**AFFIRMED.**