# IN THE COURT OF APPEALS OF IOWA

No. 16-0615
Filed December 21, 2016


**MIGUEL ALVAREZ,**
  Plaintiff-Appellee,

**vs.**

**NORMA A. RIVERA,**
  Defendant-Appellant.
_____


Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott, Judge.


A mother appeals the district court's grant of physical care to the child's father. **AFFIRMED.**


John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

Kendra M. Olson, Sioux City, for appellee.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Miguel Alvarez and Norma Rivera are the unmarried parents of M.E.A. Norma appeals the district court's grant of physical care to Miguel. Like the district court, we find M.E.A.'s best interests are served by placing responsibility for his daily routines with his father. Accordingly, we affirm.

M.E.A. was born in 2009 in Grand Island, Nebraska, where he lived with both parents and two half-siblings. When M.E.A. was two years old, Norma moved with her older children to her mother's home in Denison, Iowa. Miguel's mother, Martha, and his sister moved in to help care for M.E.A. Norma testified she left M.E.A. with Miguel because she knew Martha would provide good care. During the year Norma lived with her mother in Iowa, she saw M.E.A. monthly. When M.E.A. turned three, Norma moved to Boston to work for Herbalife. During the four or five months she lived in Massachusetts, Norma spoke to M.E.A. on the telephone.

When Miguel filed for temporary custody of M.E.A. in Nebraska, Norma returned for the hearing and decided to stay in Nebraska. The court granted Miguel temporary custody. Norma had her own residence, the parties' relationship improved, and Norma helped with M.E.A.'s transportation and other activities. In November 2012, Norma's son from a different relationship was born. Miguel's Nebraska case was dismissed.

In early 2013, Miguel and M.E.A. moved to Sioux City for Miguel's employment. Norma moved to Oklahoma. In November 2013, Norma moved to Sioux City and lived with Miguel and M.E.A. That living arrangement lasted for seven months. In June 2014, Norma moved to California, and Miguel's mother

and sister again cared for M.E.A. for one year until June 2015, when Daisy, Miguel's girlfriend, and her three children (ages nine, seven, and three) moved in. The court found "Daisy provides care for M.E.A. while [Miguel] works, just as Miguel's mother used to [do] prior to moving out."

Norma testified she moved to California in June 2014 for a new job and to be closer to the families of her other children. At the time of trial, Norma was living with her children who were ages fifteen, fourteen, and three. She worked from 8:00 a.m. to 5:00 p.m. and contacted M.E.A. though telephone calls and video chats. When Norma left Sioux City, the parties orally agreed Miguel would have physical care during the school year and M.E.A. would spend his summers in California. At trial, Norma claimed they also agreed Miguel's mother would care for M.E.A.

On July 11, 2015, Norma arrived at Miguel's residence, telling him she wanted to flip the custody arrangement. Norma planned to enroll M.E.A. in a California school, and Miguel would have summer visitation. Norma felt justified in unilaterally changing the agreement because Miguel did not hold up his end of the bargain when he allowed Daisy to replace his mother, Martha, as M.E.A.'s babysitter. On July 13, Miguel filed a petition in Iowa seeking legal custody and physical care of M.E.A.

While Norma was in Iowa, the parties and their attorneys arranged for her to spend time with M.E.A. in Sioux City. Ignoring the arrangement, Norma immediately flew with M.E.A. to California. Miguel filed a motion for an emergency ex parte custody order, and the court directed Norma to return M.E.A.

to Iowa and granted custody to Miguel pending a temporary hearing in August 2015. Norma complied and returned M.E.A. to Iowa.

After the August 2015 hearing on temporary matters, the preliminary order entered the same day required M.E.A. to stay with Miguel in Sioux City until the court's ruling. Norma returned to California and contacted M.E.A. by telephone. On November 20, 2015, the court entered its order on temporary matters, granting Miguel custody of M.E.A. during the pendency of the action. Noting Norma wanted to see M.E.A. at Christmas, the court set visitation with a caveat: "[S]aid visitation shall be exercised in [Iowa], and [Norma] shall not remove the child from [Iowa] without prior permission of the court." Noting Norma's prior trip to California with M.E.A. without authority, the court added: "It is ordered that the child shall not be removed from the jurisdiction of this court again without prior court approval."

Despite the prohibitions in the November order, the next month during her 2015 Christmas visitation, Norma once again left Iowa with M.E.A.—throwing the GPS watch–phone Miguel had given M.E.A. for Christmas out the window in South Sioux City, Nebraska and taking M.E.A. to Grand Island. During this visitation, Norma took M.E.A. to the dentist, who found several cavities.

Norma planned to visit M.E.A. again in February 2016. On January 19, 2016, she sought a modification allowing her to take M.E.A. to Nebraska during visitations. On February 4, 2016, Miguel filed a motion seeking to have Norma's visits either supervised or allowed only on the condition she provide him with contact information and the location of the visitation. The court's February 12, 2016 order allowed Norma to take M.E.A. to Omaha for her February visitation,

advising a failure to comply "would very likely result in a finding of contempt." The court denied Miguel's request for supervised visitation but ordered Norma to provide contact information.

At the hearing on March 2, 2016, Miguel testified he leaves for work around 5:30 a.m. and returns around 7:00 p.m. M.E.A. goes to bed around 9:00 to 9:30 p.m. and has his own bedroom at Miguel's residence. Recently, Miguel arranged for M.E.A. to see the school counselor after observing M.E.A. was upset and misbehaving. Miguel also followed up on the dental care suggested by Norma's dentist. Miguel expressed concerns about Norma having physical care—testifying she has been absent for the majority of M.E.A.'s life and her frequent moves show instability.

Norma testified Miguel currently does not communicate with her—he did not tell her about the counselor, M.E.A.'s recent baptism in the Catholic Church, or his mother moving out and Daisy moving in to care for M.E.A. Miguel responded he did not share that information with Norma because she has not been actively involved in M.E.A.'s life.

After considering the testimony, the court issued an order on March 10, 2016, granting the parties joint legal custody of M.E.A. with physical care to Miguel. The court noted M.E.A. was doing well in his current custodial arrangement, enjoying "stability and structure" in Miguel's home. M.E.A. also has extended family and friends in Sioux City. The court found M.E.A.'s recent behavior problems in school "may be due, at least in part, to Norma beginning to exercise visitation again." Recognizing Miguel has been in charge of M.E.A.'s care for the majority of the last five years, the court found Miguel is involved with

M.E.A. when he is not working. "On the other hand . . . Norma has had very little meaningful involvement with the child over this time frame while she moved from one coast to the other and had another child." As to M.E.A.'s health, the court found: "It also appears [M.E.A.] has been well cared for with few medical issues other than cavities." The court approved of Miguel taking "the proper steps to make arrangements for counseling" after M.E.A. acted out. The court observed M.E.A. has adjusted well to Daisy being involved in his life as a caretaker and "also appears to have adjusted reasonably well to having his future step-siblings living with him."

As to Norma's request for physical care, the court ruled:

> Of significant concern to the court is Norma's apparent need to place her needs above the interests of [M.E.A.] She initially took [him] to California with the intent of him staying there after the attorneys and parties had agreed she would simply exercise a visit here in Sioux City for a few days. She likewise disobeyed the court's order when she took [M.E.A.] to Nebraska after being told not to take [him] from Iowa.

The court concluded: "[I]t is clearly in M.E.A.'s best interest that his physical care remains with Miguel at this time."

In her appeal, Norma seeks physical care of M.E.A. We review de novo. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). While we decide the appellate issues anew, we give weight to the district court's findings of fact. *Id.* When it comes to witness credibility, "[t]here is good reason for us to pay very close attention to the trial court's assessment." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). The trial judge "is greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974).

Physical care involves the parents' obligation and opportunity to maintain a home and provide routine care for their child. Iowa Code § 598.1(7) (2015); *In re Marriage of Hansen*, 733 N.W.2d 683, 690-91 (Iowa 2007) (explaining physical-care parent must navigate "the myriad of details" associated with everyday childrearing). After our de novo review of the record, we agree with the district court's insightful observations, especially as to Norma's unwillingness to put M.E.A.'s needs first. M.E.A. will experience greater stability and continuity in the physical care of Miguel with visitation for Norma; this arrangement most closely approximates the proportion of time spent with each parent during M.E.A.'s lifetime. *See Hansen*, 733 N.W.2d at 683 (stating the factors of "stability and continuity" favor the spouse who "was primarily responsible for physical care"). We agree M.E.A.'s best interests are served by granting physical care to Miguel. Considering all the pertinent factors, we affirm.

**AFFIRMED.**