**IN THE COURT OF APPEALS OF IOWA**

No. 17-1549
Filed May 2, 2018

**IN RE THE MARRIAGE OF MATTHEW JON VICKERS
AND KATHRYN ANN VICKERS**

**Upon the Petition of
MATTHEW JON VICKERS,**
        Petitioner-Appellant,

**And Concerning
KATHRYN ANN VICKERS,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Jefferson County, Mary Ann Brown,

Judge.

        A father appeals the physical care provision of his dissolution decree.

**AFFIRMED.**

        Michael O. Carpenter of Gaumer, Emanuel, Carpenter & Goldsmith, P.C.,

Ottumwa, for appellant.

        Allison M. Heffern and Kristen A. Shaffer of Shuttleworth & Ingersoll, P.L.C.,

Cedar Rapids, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

Matthew ("Matt") and Kathryn ("Katey") Vickers married in September 2010 and divorced seven years later. The district court granted Katey physical care of the couple's two children. On appeal, Matt contends he should have been granted physical care.

"Physical care" involves "the right and responsibility to maintain a home for the minor child and provide for routine care of the child." Iowa Code § 598.1(7) (2016). "The objective of the physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

The district court found the couple "had a very unhappy marriage." In the court's view, Matt's abuse of alcohol and Katey's verbal and emotional aggression "caused their relationship to be toxic from the beginning" and the parents and children "suffered significantly" as a result. At the conclusion of trial, the court characterized the physical care determination as "challenging." In the decree, the court stated, "Choosing between these parents is akin to choosing between the lesser of evils." After meticulously documenting the evidence of marital dysfunction, the court granted Katey physical care of the children. The court provided the following reasoning:

> Balancing each of the parties' individual deficiencies, with Katey's history of being the primary physical caretaker and the anticipation that Katey's job will likely have more flexible hours than Matt's for child care responsibilities; leads to the conclusion that Katey is better suited to be the primary physical custodian of the children.

The court acknowledged the decision was "temper[ed]" by Katey's stated desire to leave the state and return to Arizona, where the couple had lived for twelve years and where her parents currently lived. To alleviate concerns with the move, the court ordered Katey to give Matt advance notice of four months.

On our de novo review, we find extensive support for the court's detailed fact findings.

Matt, who was in his forties at the time of trial, began to abuse alcohol before the legal age to drink and continued to abuse alcohol well into 2014. His admitted abuse led to the termination of his employment in Arizona. Although he testified his alcohol use did not affect work at his new job in Iowa, he acknowledged continued consumption until January 2017, and he conceded his period of abstinence was less than four months. Matt also acknowledged the toll his conduct took on his family, stating, "[W]e both have things that we did [from 2012 through the separation in January 2016] that were not helpful . . . with regards to the stability of our marriage."

It is true that a therapist who counseled Matt declined to diagnose him with alcohol abuse disorder for the twelve-month period preceding trial. But the therapist acknowledged Matt did not report his previous inability to limit the amount of alcohol he ingested. He stated a diagnosis was contingent on the accuracy of Matt's reporting. Given Matt's lengthy history of alcohol abuse and his limited period of abstinence, the district court appropriately considered "[t]he dangers posed to the children that can result if Matt returns to his behaviors."

As for Katey, recordings of family interactions reveal controlling behavior and emotional volatility in the presence of the children. Katey admitted her

"behavior [as reflected on a recording] was completely inappropriate" and she was "ashamed of it." But she minimized the effect of certain accusations she leveled at Matt. Those accusations proved unfounded and lent credence to Matt's testimony that she "weaponized" the children in her efforts to obtain physical care. We find it unnecessary to delve into the details of her charges. Suffice it to say they supported the district court's concern about whether "Katey would, as a physical custodian of the children, foster and encourage a relationship between the girls and their father."

At the end of the day, the district court was faced with an extraordinarily difficult decision. Because the court's fact findings are supported by the record and the court had the benefit of being able to see and hear the witnesses, we affirm the physical care decision. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.'" (quoting *In re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974))).

Katey requests appellate attorney fees of $7500 "[b]ased on the disparity in the parties' earning power, Kathryn's disadvantaged economic position, and the relative merits of the parties' positions on appeal." Because she prevailed and her earnings were far less than Matt's earnings, we order Matt to pay $2000 towards her attorney fee obligation. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (setting forth factors to consider in making an award).

**AFFIRMED.**