**IN THE COURT OF APPEALS OF IOWA**

No. 24-1931
Filed August 6, 2025

**MATTHEW MARCHESANO,**
    Plaintiff-Appellant,

**vs.**

**TARIA DILLON,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Boone County,
Christopher C. Polking, Judge.

Matthew Marchesano appeals from an order establishing paternity,
custody, physical care, visitation, child support, and trial attorney fees. **AFFIRMED
AND REMANDED WITH INSTRUCTIONS.**

Jesse Marzen of The Lawyers, P.L.L.C., Hampton, for appellant.

Jason Springer of Springer Law Firm, PLLC, Madrid, for appellee.

Considered without oral argument by Schumacher, P.J., and Buller and
Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

Matthew Marchesano appeals from an order establishing paternity, custody, physical care, visitation, child support, and trial attorney fees. Matthew challenges the district court's order of physical care of the parties' two children with their mother, Taria Dillon, and claims the court incorrectly calculated his income for child-support purposes. Matthew also challenges the court's award of trial attorney fees to Taria. Upon review, we affirm the court's decree and remand for an award of appellate attorney fees to Taria.

## I.     Background Facts & Proceedings

Matthew and Taria are the parents of two daughters, A.M., born in 2020, and E.M., born in 2022. The parties have never been married but were in a relationship until they separated sometime around November 2023. Matthew has an adult child that lives out of state. Taria has two older sons, ages twelve and fourteen. She shares physical care of those children with their father.

During the relationship, the parties lived in a home they purchased together in Boone. Following the split, Matthew moved into a one-bedroom apartment in Ames. Taria has continued to live in the home in Boone, and Matthew has paid the mortgage and utilities each month.

The parties had a business together that performed satellite television installations, upgrades, and services for commercial properties. Matthew now owns and operates the business without Taria. He testified that he works from home, averaging around sixty to eighty hours per week or more. Taria worked for the company now owned by Matthew until the parties' relationship ended. She

now works around twenty-five hours per week for a different business. She testified she limits her working hours "to accommodate [her] kids and their needs."

Shortly after the parties separated, Matthew filed a petition to establish paternity, custody, physical care, visitation, and child support. The parties agreed to joint legal custody, but Taria resisted Matthew's request for joint physical care and asked the court to order physical care with her. Following a two-day trial in November 2024, the district court awarded the parties joint legal custody and ordered physical care of the children with Taria. The district court determined Matthew's income for child-support purposes to be $269,025, Taria's income to be $27,300, and assessed Matthew's child-support obligation accordingly. The district court also ordered Matthew to pay Taria's trial attorney's fees. Matthew appeals.

## II. Standard of Review

Because a custody proceeding is a proceeding in equity, we apply de novo review. *See, e.g.*, *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017); *see also* Iowa R. App. P. 6.907. While we give deference to the district court's factual findings, especially when considering witness credibility, we are not bound by them. Iowa R. App. P. 6.904(3)(g). "This also means we will affirm the district court unless the district court failed to do substantial equity." *Hensch*, 902 N.W.2d at 824.

## III. Physical Care

Matthew challenges the court's order of physical care of the children with Taria. His claims focus on the court's weighing of the factors relevant to the physical-care analysis. According to Matthew, the record established the parties

were equally positioned for physical placement and therefore joint physical care is in the children's best interest.

The primary consideration for any physical care determination is the best interest of the children. *Id.*; *see also* Iowa R. App. P. 6.904(3)(n). This best-interest analysis drives judicial resolution of physical-care issues; resolution does not depend on perceived fairness to the parties. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* Each decision is made considering the unique facts of the case. *Id.*

In determining which physical-care arrangement is in the children's best interests, we are guided by the factors in Iowa Code section 598.41(3) (2023) and the four factors set out in *Hansen*:

> (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99); *see also* Iowa Code § 600B.40(2) (directing the court to apply section 598.41(3) in non-dissolution custody cases). We discuss each factor below in turn.

As to the element of approximation, we begin by noting that the record reflects both parties are attentive to their children while the children are in their care. Both parents were described by witnesses as good parents who are actively

engaged in their children's lives. Both parents attend the children's tumbling practices and participate in taking the children to appointments when their shared care schedule allows.[1]

But as the district court found, the record shows Taria has historically been the primary caretaker for the children. Taria testified she was the parent who tended to the children when they woke up in the middle of the night. Although Matthew testified he was near-equally involved with the children's caretaking, the record shows Matthew's work schedule has not been conducive to such equal involvement in the children's day-to-day needs. He testified he works upwards of sixty to eighty hours per week, "[i]f not more." And the record indicates that Matthew's work kept him away from home more often than he admitted during testimony.

Accordingly, we agree with the district court's assessment that "Taria was the primary caretaker of the children when they were together, and Matthew was the primary breadwinner." So the first element leans in favor of Taria, though not dispositively. *See Hansen*, 733 N.W.2d at 696 ("Stability and continuity factors tend to favor a spouse who, prior to divorce, was primarily responsible for physical care."); *see also Berning*, 745 N.W.2d at 93 (indicating one parent's role as the primary breadwinner mitigates against their lessened role as the primary caretaker

---

[1] In March 2024, the district court entered a temporary order setting care, custody, and support obligations for the duration of the proceedings. Among other things, the temporary order provided for joint legal custody and awarded primary physical care to Taria with Matthew having seven hours of visitation each week. The visitation times specified in the temporary order did not allow Matthew to transport A.M. to or from preschool. He testified that he would transport the children if he was able, and if not, he would arrange a family member to do so.

when, outside of working hours, both parents are positively and actively engaged in a child's life); *Dicks v. Eccles*, No. 19-0994, 2020 WL 2071116, at *2 (Iowa Ct. App. Apr. 20, 2020) (finding the child's young age a factor lessening the weight given to the mother's role as the historical primary caretaker).

The second element also disfavors joint physical care. The record reflects the raw emotion of the split remains and is a barrier to the parents' ability to communicate and show mutual respect. The district court noted,

> It was clear throughout the trial that Taria sought to amplify and embellish any and all flaws of Matthew, and that Matthew sought to lessen any negative traits or incidences. The raw feelings of the parties towards each other surrounding the end of their relationship and their interactions with each other since were evident.
> . . . .
> . . . [I]t is apparent that the relationship of the parties is still fraught with tension. Matthew habitually yells at Taria and verbally degrades her, and he does this in front of the children. This sets a terrible example for his female children, particularly as they get older. He is modelling for them a negative example of how they should expect to be treated. While not as blatant as Matthew's actions, it is clear that Taria does not respect him as a parent and is very controlling. There is little mutual respect between the parties at this time.

Unlike in our prior decision cited by Matthew, *Moses v. Rosol*, we do not find this is a circumstance where the parties have communicated respectfully on parenting matters despite their remaining personal conflict. *See* No. 18-0791, 2019 WL 2145709, at *4 (Iowa Ct. App. May 15, 2019). Upon our careful de novo review of the record, we agree.

On the third factor of conflict between the parties, in addition to the above, we note that the parties dispute whether their arguments ever resulted in physical aggression. As to this dispute, the district court stated,

> Having observed the parties testify, the court finds credible that Matthew has been physical with Taria. While these have been simple assaults, combined with his history of yelling and making demeaning comments, it is cause for concern. However, the court does not find that the conduct rises to the level of a "history" of domestic abuse.

(Internal citation omitted.) The district court later continued, observing the record showed Matthew exhibited "concerning and aggressive behaviors. Matthew frequently yells at Taria in front of the children, he has upset the children with this, and he has insulted her in front of the children."

We defer to the district court's witness credibility determination. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.'" (quoting *In re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974))). As the district court noted, "Domestic abuse is, in every respect, dramatically opposed to a child's best interests." *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997). Accordingly, the third factor weighs against joint physical care and in favor of Taria. *See id.*; *see also Hansen*, 733 N.W.2d at 699 ("Even a low level of conflict can have significant repercussions for children.").

Regarding the fourth factor, the parties did not present much evidence that would indicate conflict in their respective approaches to daily matters. While there is lingering tension between the parties after their separation, the conflict does not center around approaches to parenting, generally. But Taria has maintained reduced work hours so she can be greatly involved in the children's daily lives.

Although Matthew claims he "could eliminate" his sixty-to-eighty-hour work week "immediately" if granted joint physical care, he has declined to take all of his current visitation time with the children, citing work, illness, and "personal reasons." This factor therefore favors Taria. *See In re Marriage of Hiatt*, No. 22-0758, 2022 WL 16631185, at *3 (Iowa Ct. App. Nov. 2, 2022) (considering the father's prioritization of personal interests over his involvement in the children's lives).

Having considered the factors guiding our physical-care analysis, we are not persuaded by Matthew's argument that he "is on equal footing as Taria." We agree with the district court's determination that joint physical care is not in the best interests of the children under the circumstances and affirm the court's order placing physical care with Taria.

## IV. Calculation of Income for Child-Support Determination

Matthew asserts the district court erred in calculating his income for purposes of determining his child-support obligation because the district court included some of Matthew's business income in the calculation, rather than rely only on the weekly salary payments Matthew reported. The only legal authority Matthew cites to support his assertion is a case in which we held the district court appropriately assessed the earner's income at a rate higher than what the earner reported. *See In re Marriage of Eubanks*, No. 04-0866, 2004 WL 2952688, at *2 (Iowa Ct. App. Dec. 22, 2004). Rather than support Matthew's argument, our prior decision affirms that the district court can reject a party's self-reported income and deductions when it finds the reports "do not accurately reflect his income." *Id.* Matthew has failed to provide legal authority support for this argument. He has therefore waived the issue. *See* Iowa R. App. P. 6.903(2)(a)(8)(3).

But even if we were to consider Matthew's challenge, we would decline to disturb the district court's conclusion that the three-year average net profit from Matthew's business is the most appropriate determination of Matthew's income for calculating his child-support obligation. Matthew was adamant throughout the proceedings that he is and has been the sole owner of the business. He acknowledged understanding that as the sole owner the business's net profits are available to him as income.[2]

"In calculating child support, the first step is to determine the parents' current monthly net income from the most reliable evidence presented." *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999). "Generally, completed federal and/or state income tax returns are the best evidence of income and tax liability." *In re Marriage of Will*, 602 N.W.2d 202, 204 (Iowa Ct. App. 1999). Other evidence may be a party's self-reported income; but if a court finds a party's self-reported income and deductions do not accurately reflect the party's income, the court can reject the party's claim. *See, e.g.*, *Eubanks*, 2004 WL 2952688, at *2.

The district court was unable to use Matthew's 2023 tax returns because Matthew had not filed that tax return, which he admitted he intentionally avoided during this proceeding. Accordingly, the district court had to look to other reliable evidence.

In determining Matthew's income, the district court stated:

[T]he court finds Matthew's statements that he does not know his 2023 income not to be credible. Matthew has run his own business for over five years, growing his gross receipts from $82,452 in 2019 to $1,406,063 in 2022, with a respective net profit of $28,774 growing

---

[2] Matthew testified that his business is an S Corporation and that the net profits must be attributed to the owner at the end of each year.

to $294,108. He works with 7 vendors, has 16 techs working as independent contractors, three employees, and covers 26 states. It is an absurd notion that he does not maintain a balance sheet, profit and loss statement, or review his business account(s). Even if his accountant does not want to file the tax return until the marital status was established, the return could be prepared as both single and married so that Matthew and the accountant knew the numbers. Matthew acknowledges that the preparer has the information needed for the 2023 return. His income for the year could be easily calculated. If Matthew's income from the business was actually less in 2023 or up to the present in 2024, he and only he is in control of that information and he could have easily provided it. The court therefore assumes that his 2023 income was at least as much as his 2022 income.

The district court then determined Matthew's income for child support purposes using a three-year average of his net profits from 2021, 2022, and 2023 (relying on the net profits of 2022 as the projection for 2023). *See Knickerbocker*, 601 N.W.2d at 52 ("Iowa case law clearly allows a court to compute a parent's annual income by using the [average] method . . . ."). The district court used these three years because the business experienced significant growth after its first few years, resulting in a significant increase in net profits in these later years, and because evidence established the business continued on a growth trajectory.[3] *See In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991) ("Where the parent's income is subject to substantial fluctuations, it may be necessary to average the income over a reasonable period when determining the current monthly income."). The district court calculated that average, and thus Matthew's income, to be $269,025. The district court then assessed Matthew's support obligation according to the child support guidelines, as is proper. *See In re*

---

[3] Although Matthew attempted to backtrack on this testimony, we find the evidence shows his testimony that the business was on a growth trajectory is more credible than his later testimony that business was declining.

*Marriage of Hilmo*, 623 N.W.2d 809, 811 (Iowa 2001). On this record, we determine the district court appropriately calculated Matthew's income.

## V.  Attorney Fees

Matthew's dispute of the award of attorney's fees to Taria is based singularly on a successful challenge to the district court's determination of his income for child support calculation purposes. Because he has not succeeded on that issue, we reject his challenge to trial attorney fees awarded to Taria.

## VI.  Appellate Attorney Fees

Taria requests appellate attorney fees. We have discretion to award the prevailing party their reasonable attorney fees. Iowa Code § 600B.26; *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Factors to be considered in determining whether to award attorney fees include: 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Sullins*, 715 N.W.2d at 255 (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)).

Taria is the prevailing party in this appeal. And Matthew is in a much better position to pay Taria's attorney fees to defend his appeal. We believe it is appropriate to award Taria her appellate attorney fees. While we would prefer to set those fees rather than require the district court to do so, given the lack of an attorney fee affidavit or other supporting documentation from Taria, we are left with remand as an option. Accordingly, we remand to the district court to award Taria "reasonable attorney fees" for the appeal. Iowa Code § 600B.26.

**VII.    Conclusion**

Upon our de novo review, we affirm on all issues and remand for the limited purpose of setting appellate attorney fees for Taria.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**